JOHNSTON, Appellant, vs. CUDAHY, Respondent.

*May 1—October 8, 1929.*

For the appellant there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *J. G. Hardgrove,* all of Milwaukee.

The following opinion was filed June 4, 1929:

OWEN, J. It appears that the plaintiff, being desirous of indulging in horseback riding, applied to his long-time friend, Michael F. Cudahy, the defendant, who was the owner of a

stable and the keeper of horses, for a suitable horse. It was known to the defendant that the plaintiff was an unskilled rider and that his experience required a gentle horse. The defendant showed him a horse named Shannon and the plaintiff attempted to ride him. His experience in this attempt was not reassuring, as the horse seemed a little too keen, high strung, and unmanageable for the plaintiff. The plaintiff communicated his doubts to Cudahy, and after further negotiations it was finally agreed, as the jury found, that the plaintiff would take the horse, paying the defendant $1,800 therefor, and that if the horse proved unsatisfactory to the plaintiff within a month the defendant would repay to the plaintiff the $1,800. Well within the month the horse proved unsatisfactory to the plaintiff and he tendered the horse back to the defendant, demanding repayment of the purchase money, but the defendant refused to receive the horse back or to repay the purchase money. This action was brought to recover the $1,800 paid by plaintiff to the defendant, but as the plaintiff has sold the horse and is now unable to return him to the defendant he must recover upon the defendant's breach of the contract in refusing to accept the return of the horse and pay plaintiff back the purchase money.

During the trial it was stipulated that the question of damages should be determined by the court should the jury find the contract between the parties as above stated. In his written opinion the trial judge says:

"In the absence of proof that, at the time of the original purchase by Johnston from Cudahy, in May, 1925, the horse was rattle-headed, unmanageable, and uncontrollable, I shall adopt as its value the figure set by Dr. Touissaint, whose testimony I consider to be credible. The value hereby accepted, $2,250, being greater than the purchase price paid by Johnston, it follows that plaintiff, on his theory of the case, has suffered no damages, and, as a matter of law, is not entitled to recover."

It is true that Touissaint testified that he had made an examination of the horse with a view of fixing his value and that he considered him worth $2,250. However, he testified on cross-examination that if "he was rattle-headed and lunged his jumps he wouldn't be worth no $2,500, I tell you that; not if he was rattle-headed and jumped and tore and was a bad actor and all that. He might be worth $500 or barely that."

A consideration of the record in this case leaves a strong impression that Shannon was just exactly that kind of a horse. No matter how skilfully isolated portions of the testimony of witnesses in this case may be conjured with to show to the contrary, the sum total of the evidence of every witness in the case is conclusive that Shannon was a bad actor, totally unsuitable for an unskilful rider, and not to be coveted or sought by the most skilful of riders. It will not be necessary to review the evidence at length, as the following extract from a letter written by the defendant to the person from whom he purchased the horse specifies the character of the horse as shown in the evidence. He said: "We have been working the chestnut (Shannon) to show as a three-gaited horse, but he has been a disappointment, as he will not steady down. He is a wonderful-looking horse, but seems to have rattle-headedness bred in him."

A judgment based upon the assumption that Shannon was not a rattle-headed and unmanageable horse at the time of the sale, or at any time subsequent thereto, constitutes a miscarriage of justice. It is contrary to the record. At least the court could not say that there was no proof that the horse was of such a character at the time of its purchase by the plaintiff from the defendant.

Other questions are presented which it seems unnecessary to consider, further than to say that the ruling of the court denying to plaintiff the right to amend his complaint by substituting the date of May 27th for that of May 17th

seems arbitrary, and that much evidence legitimate upon the subject of damages was excluded. There seems to be no reason for re-litigating the question of what the contract between the parties was. That has been decided by the jury. There should, however, be a new trial upon the question of damages.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial upon the question of plaintiff's damages.

A motion for a rehearing was denied, with $25 costs, on October 8, 1929.